IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN BARBER, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> AVCO CORPORATION, *et al.*, <br> *Defendants*. | CIVIL ACTION <br> Nos. 15-03146 <br> 15-04096 |

<u>MEMORANDUM</u>

**PAPPERT, J.**                                                                                    **November 16, 2015**

      Plaintiffs Steven Barber, Carol Dumont, Jessica Jose and Andrea Boley (collectively "Plaintiffs") filed this lawsuit in the Philadelphia County Court of Common Pleas after Sandra Haley and Jamie Jose were killed in an airplane crash.[1]  Defendant D&G Supply ("D&G"), which overhauled and certified as airworthy the plane's carburetor, removed the complaint to this Court based upon the federal officer removal statute, 28 U.S.C. Section 1442.  (ECF No. 9.)  Before the Court is Plaintiffs' motion to remand.  (ECF No. 22.)  For the reasons stated below, the Court grants the motion and remands the case to the Common Pleas Court.[2]

**I.**

      Sandra Haley, Jamie Jose and two others were passengers aboard a Cessna 172M aircraft when it crashed on June 21, 2013, in Waterford Township, Michigan.  (Compl. ¶ 74.)  All four

---

[1] Steven Barber and Carol Dumont are Sandra Haley's parents.  (Compl. ¶ 1–2.)  Jessica Jose is Jamie Jose's widow and natural mother of his children, Braden Jose and Gabrielle Jose.  (*Id.* ¶ 3.)  Andrea Boley is the natural mother of Jamie Jose's daughter Abygale Jose.  (*Id.* ¶ 4.)

[2] Plaintiffs filed a similar motion to remand in *Barber, et al. v. Avco Corp., et al.*, No. 15-04096 (E.D. Pa. 2015).  D&G also removed that case from the Philadelphia County Court of Common Pleas on July 24, 2015, to this Court pursuant to the federal officer removal statute.  (ECF No. 1.)  On August 14, 2015, Plaintiffs filed a motion to remand.  (ECF No. 12.)  D&G did not file a response.  By separate Order today, the Court grants Plaintiffs' motion in that case as well.

1

died in the crash.  (*Id.*)  Plaintiffs allege that the plane's carburetor was improperly overhauled and certified as airworthy by D&G, and that the faulty carburetor caused the engine to fail and the plane to crash.  (*Id.* ¶ 79.)

Plaintiffs assert claims against AVCO Corporation, Lycoming Engines, and AVCO Lycoming-Textron which together designed, manufactured, sold, supplied, overhauled, and/or rebuilt the engine; AVStar Fuel Systems, Inc., which designed, manufactured, sold, supplied, overhauled, and/or rebuilt certain engine components; and D&G, which overhauled the carburetor, certified it as airworthy, and returned it to service for installation into the Lycoming engine.  (*Id.* ¶¶ 5–22.)  With respect to D&G, Plaintiffs allege negligence, breach of warranty, breach of contract, and negligent infliction of emotional distress.  (*Id.* ¶¶ 240–75.)

On June 8, 2015, D&G removed the case from the Philadelphia County Court of Common Pleas to this Court pursuant to the federal officer removal statute, 28 U.S.C. Section 1442(a)(1).[3]  (ECF No. 9.)  On July 5, 2015, Plaintiffs filed their motion to remand.  (ECF No. 22.)  D&G filed its response on July 16, 2015.  (ECF No. 26.)  The Court heard oral argument on the motion on November 13, 2015.

## II.

Removal of an action from state court is typically only permissible to the extent that the action could have initially been brought in federal court.  28 U.S.C. § 1441.  Congress's conferral of original jurisdiction on federal courts does not generally allow a defendant to remove a suit to federal court on the basis of a federal defense.  *Louisville & Nashville R. R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) (describing the statutory grant of federal question

---

[3]   Whereas all defendants must consent to removal under 28 U.S.C. Section 1441, a defendant acting under a federal officer can unilaterally remove a case under Section 1442.  *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *see also Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1030, 1315 (9th Cir. 1981).  Since the defendant acting under a federal officer is the only one entitled to remove under Section 1442, he alone can remove without other defendants joining in the petition, and the entire case is removed to the federal court.

jurisdiction to only permit jurisdiction "when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]" and that it is not enough "that the plaintiff alleges some anticipated [federal law] defense").

The federal officer removal statute is an exception to this general principle.[4] *Mesa v. California*, 489 U.S. 121, 136 (1989) (explaining that the federal officer removal statute is a "pure jurisdictional statute . . . [that] grant[s] district court jurisdiction over cases in which a federal officer is a defendant"). It allows the following class of defendants to remove a state action to federal court:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). The party removing an action to federal court bears the burden of proving that removal is appropriate. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). To establish subject matter jurisdiction under Section 1442(a)(1), a defendant must show:

> (1) [I]t is a "person" within the meaning of the statute; (2) the plaintiffs' claims are for or related to acts taken by the defendant "acting under" the color of a federal officer; and (3) that it raises a colorable federal defense.[5]

The Court must broadly construe defendants' ability to remove under Section 1442(a)(1) as to avoid frustrating its policy objective of "hav[ing] the validity of the defense of official immunity tried in federal court" by applying a "narrow, grudging interpretation." *See Willingham v.*

---

[4] Plaintiffs' motion cites to cases standing for the general rule, inapplicable under the federal officer removal statute, regarding removal of actions from state courts. (Pls.' Motion at 2–3.)

[5] Congress amended Section 1442(a)(1) in 2011 to encompass suits "for *or relating to* any act under color of [federal] office." 28 U.S.C. § Section 1442(a)(1) (emphasis added). This amendment did away with the causal nexus requirement. *See Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citing *Mesa*, 489 U.S. at 129) ("(1) [I]t is a "person" within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct "acting under" a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal defense.").

*Morgan*, 395 U.S. 402, 407 (1969); *see also Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir. 1994) (distinguishing the general removal standard from the standard applicable in cases removed pursuant to Section 1442(a)).

Moreover, "a defendant is entitled to removal under Section 1442(a)(1) where the defendant identifies facts which, viewed in the light most favorable to the defendant, entitle him or her to a complete defense." *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 778 (E.D. Pa. 2010). If it later becomes evident that the relevant facts developed in the litigation do not support jurisdiction, the Court will do what it would do in any removed case: dismiss and remand the action based on lack of subject matter jurisdiction. FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action."); 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

### III.

### A.

Plaintiffs do not contest that D&G is a "person" within the meaning of the statute. (*See generally* Pls.' Motion.) In any event, it is well settled that corporations such as D&G qualify as persons under the statute and may seek removal accordingly. 1 U.S.C. § 1 ("[I]n determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, and associations."); *see Good v. Armstrong World Industries, Inc.*, 914 F. Supp. 1125, 1128–29 (E.D. Pa. 1996) (finding that a corporation is a person under Section 1442(a)(1)); *see also Hagen*, 739 F. Supp. 2d at 777 (determining that a corporation is a person under Section 1442(a)(1)).

**B.**

The federal officer removal statute extends removal authority only to persons acting under an officer of the United States. *See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 80 (1991). A private person "acting under" a federal officer must assist or help carry out the duties or tasks of the federal superior. *See Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 152 (2007); *see also Davis v. South Carolina*, 107 U.S. 597, 600 (1883). It is not enough for a defendant to show that the "relevant acts occurred under the general auspices of a federal officer." *Good*, 914 F. Supp. at 1128.

Plaintiffs argue that their claims against D&G pertain to its conduct as an "overhaul shop," not a federal officer. (Pls.' Motion at 4.) Furthermore, Plaintiffs allege that their claims against D&G arise from "its own duty to comply with the applicable regulatory requirements and standards of care." (*Id.*) Plaintiffs rely primarily on two decisions: the United States Supreme Court's opinion in *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142 (2007) and the Seventh Circuit Court of Appeals' opinion in *Lu Junhong v. Boeing Co.*, 792 F.3d 805 (7th Cir. 2015). (Pls.' Motion at 4–5.)

The question before the Court in *Watson* was whether the fact that a federal regulatory agency "directs, supervises, and monitors" a company's activities in "considerable detail" brings that company "within the scope of the italicized language ('*acting under*' an '*officer*' of the United States)" and thereby permits removal. *Watson*, 551 U.S. at 145. The Court held that it did not. *Id.* Lisa Watson filed a class action lawsuit against Philip Morris, claiming that the company violated Arkansas law by misrepresenting the amount of tar and nicotine in cigarettes branded as "light." *Id.* at 146. Philip Morris removed the case to federal court on the basis that it was acting under the direct control of regulations promulgated by the Federal Trade

Commission (FTC), making Section 1442(a)(1) applicable. *Id.* The district court denied Watson's motion to remand, and the Eighth Circuit Court of Appeals affirmed the district court's ruling.[6] *Id.* at 147. The Eighth Circuit noted "unprecedented" government involvement in the tobacco industry, including detailed FTC regulations concerning the testing and disclosure of tar and nicotine levels. *Id.* Philip Morris was therefore "acting under a federal officer" and consequently entitled to remove the case to federal court. *Id.*

The Supreme Court reversed. The Court began its analysis by acknowledging the requirement to broadly construe Section 1442(a)(1), but stated that such construction is not without boundaries. *Id.* "[B]road language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes."[7] *Id.* In the Court's view, "the help or assistance necessary to bring a private person within the scope of the statute [Section 1442(a)(1)] does *not* include simply *complying* with the law." *Id.* at 152.

> The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries . . . . Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion.

*Id.* at 153. The Court concluded that "the degree of regulatory detail or supervision cannot by themselves transform Philip Morris' regulatory *compliance* into the kind of assistance that might

---

[6] Appeals courts have jurisdiction to review remand of a Section 1442(a) removal order. These orders are excepted from the prohibition in Section 1447(d). "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise." 28 U.S.C. § 1447(d).

[7] The Court spent considerable time detailing the purpose and history of the statute. *Watson*, 551 U.S. at 147–52. Specifically, the Court noted "that the removal statute's 'basic' purpose is to protect the Federal Government from the interference with its 'operations' that would ensue [where] . . . [s]tate-court proceedings may reflect 'local prejudice' against unpopular federal laws or federal officials." *Id.* at 150 (citations omitted).

bring the FTC within the scope of the statutory phrase '*acting under*' a federal 'officer.'" *Id.* at 157. D&G contends that *Watson* pertains to manufacturers, and therefore does not apply to this case because D&G is an air agency and certified repair station, not a manufacturer. (Def.'s Response at 5.) This is a far too narrow reading of the Court's decision. *Watson* makes clear that a company does not "act under" the color of a federal officer merely by complying with federal law and regulations in a heavily regulated industry. *Watson*, 551 U.S. at 153, 157.

Since *Watson*, several district courts have confronted similar arguments for removal in the aviation context. The vast majority of those courts have remanded the cases to state court. *See, e.g.*, *Vandeventer v. Guimond*, 494 F. Supp. 2d 1255, 1267 (D. Kan. 2007) (defendant did not stand in the shoes of the FAA, or act under a federal officer or agency, when he conducted the airworthiness inspection and certification); *Swanstrom v. Teledyne Cont'l Motors, Inc.*, 531 F. Supp. 2d 1325, 1333 (S.D. Ala. 2008) (defendant cannot claim removal under Section 1442(a)(1) simply because it has employees who are designated FAA authorized agents); *Glein v. Boeing Co.*, No. CIV. 11-47-GPM, 2011 WL 537987, at *2 (S.D. Ill. Feb. 8, 2011) (defendant is not entitled to removal given an improper assertion of the government contractor defense); *L-3 Commc'ns Corp. v. Serco Inc.*, 39 F. Supp. 3d 740, 750 (E.D. Va. 2014) (removal under Section 1442(a)(1) is not proper when the defendant had near full discretion over sub-contract award decisions and was therefore not "acting under" color of a federal officer); *Brokaw v. Boeing Co.*, No. 15 C 4727, 2015 WL 5915996, at *9 (N.D. Ill. Oct. 5, 2015) (noting that numerous other courts have found federal officer jurisdiction lacking where, as here, there was some tangential involvement by the federal government, but the private defendant made the actual decisions that formed the basis of the plaintiff's claims).

The only district court decision to go against this trend is *Weidler v. Professional Aircraft Maintenance*, No. CV 10-09376 SJO CWX, 2011 WL 2020654, at *2 (C.D. Cal May 13, 2011), which the Court analyzes at the end of Part III.B *infra*. All other decisions that have denied motions to remand involved the assertion of the government contractor defense. *See, e.g.*, *Beckwith v. Gen. Elec. Co.*, No. 3:09CV0216AWT, 2010 WL 1287095, at *4 (D. Conn. Mar. 30, 2010) (denying motion to remand as defendant properly alleged government contractor defense); *Boyd v. Boeing Co.*, No. CIV.A. 15-0025, 2015 WL 4371928, at *4 (E.D. La. July 14, 2015) (also denying motion to remand as defendant adequately alleged government contractor defense). *Watson* distinguished the government contractor defense from compliance as "the assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks. *Watson*, 551 U.S. at 153.

The question before the Seventh Circuit in *Lu Junhong* was whether or not Boeing was entitled to removal under Section 1442(a)(1) because "federal regulations require it to assess and certify the airworthiness of its planes." *Lu Junhong*, 792 F.3d at 808. The court held that it was not. *Id.* at 810. On July 6, 2013, a Boeing 777 attempting to land at San Francisco International Airport hit the seawall that separates the ocean from the end of the runaway. *Id.* at 807. Three passengers died in the crash and many more were injured, some very seriously. *Id.* Some of the passengers sued Boeing in Illinois state courts, contending that "the plane's autothrottle, autopilot, and low-airspeed-warning system contributed to the pilots' errors." *Id.* at 807–08. Boeing removed these suits to federal court. *Id.* at 808. The district court remanded them for lack of subject matter jurisdiction and Boeing appealed. *Id.*

Boeing contended on appeal that it was acting under the FAA because: (1) "the FAA has granted Boeing authority to use FAA-approved procedures to conduct analysis and testing

required for the issuance of type, production, and airworthiness certifications for aircraft under Federal Aviation Regulations;" and (2) "FAA Order 8100.9A authorizes and requires it to analyze the adequacy of its autopilot and autothrottle systems and certify that they meet the regulatory requirements of 14 C.F.R. § 25.1309." *Id.*  Essentially, Boeing argued that its FAA certification was enough to meet the "acting under" requirement.

The Seventh Circuit disagreed.  As a threshold matter, the court found that "certifications just demonstrate a person's awareness of the governing requirements and evince a belief in compliance." *Id.*  Moreover, "[a] figure of speech [referring to certifications] does not make someone a federal officer or a person 'acting under.'" *Id.*  Instead, the court saw the operative question as "whether being subject to governmental requirements is enough to make a person one 'acting under' the author of those regulations, for the purpose of § 1442." *Id.* at 809.

Boeing attempted to distinguish its case from *Watson* by contending that it "does not *just* follow regulations; it also certifies compliance with them and in the process reduces the size of the federal bureaucracy." *Id.*  The court was not convinced, stating that "*[e]very* regulated firm must use its own staff to learn whether it has satisfied federal regulations" and seeing no "correlation between the required certification and acting-under status." *Id.*  Boeing further argued that the relation between Philip Morris and the FTC in *Watson* was "*faux* delegation," while its relation with the FAA was "*real* delegation." *Id.* at 810.  The court again saw a distinction without a difference, as Boeing had the "power to certify *compliance*, not a power to design the rules for airworthiness." *Id.*

While D&G does not address *Lu Junhong*, it does argue that the FAA issued D&G's Air Agency Certificate number NK2R034L and that the Air Agency Certificate "empowered D&G [] to operate as a repair station and certify aircraft components' 'airworthiness' under the direction

of the FAA pursuant to 49 U.S.C. § 44702(a)." (Def.'s Response at 7.) *Lu Junhong* rejected that very argument, finding that the FAA's delegation of authority to certify aircraft as airworthy does not constitute "acting under" a federal officer. *Lu Junhong*, 792 F.3d at 808. While this Court is obviously not bound by the *Lu Junhong* decision, the Court agrees with the Seventh Circuit's reasoning and finds it to be consistent with the Supreme Court's analysis in *Watson*.

D&G also relies on *Weidler v. Professional Aircraft Maintenance*, No. CV 10-09376 SJO CWX, 2011 WL 2020654, at *2 (C.D. Cal May 13, 2011), an unreported district court decision that precedes *Lu Junhong* by four years. The case involved an airplane crash that killed James Weidler. *Id.* at *1. The plaintiffs alleged that the defendants caused Weidler's death because of their negligent actions with regard to the airplane and its components. *Id.* *Weidler* does not cite *Watson* for its central holding, even though *Watson* was decided four years prior. Instead, *Weidler* primarily relies on *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112 (2d Cir. 2007), a Second Circuit case decided before *Watson*. *Watson*, 2011 WL 2020654, at *2.

Notwithstanding *Watson*, the *Weidler* court found one of the defendants was entitled to removal under Section 1442(a)(1) for the same reasons *Watson* and later *Lu Junhong* hold insufficient, namely that the removing defendant "was acting pursuant to an Air Agency Certificate issued by the FAA." *Id.* The only evidence *Weidler* cites that the defendant "acted under" a federal officer is its compliance certificate. *Id.* *Watson* held that compliance with the law, without more, is not enough for removal. *Watson*, 551 U.S. at 153. This Court accordingly concludes that D&G has failed to establish that it "acted under" a federal officer for purposes of Section 1442(a)(1) removal. While this finding alone could conclude the Court's analysis, the Court will also examine the last element—the requirement to raise a colorable federal defense.

C.

The colorable federal defense element requires that the defendant raise a claim that is "defensive" and "based on federal law." *Mesa*, 489 U.S. at 139. More specifically, such defense must "aris[e] out of [the party's] official duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981). The federal defense requirement is at least satisfied in "all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969). The defense need not be "clearly sustainable," as the purpose of Section 1442(a)(1) is to ensure that the validity of the defense will be tried in federal court." *Id.* at 407.

D&G's purported defense is, again, its reliance on "[c]ompliance with federal regulations and directives." (Def.'s Response at 10.) Just as the "acting under" element is not satisfied by alleging compliance with federal law or regulations, the requirement of a federal defense cannot be met by similar allegations of regulatory compliance. *Watson*, 551 U.S. at 153. D&G contends that it has satisfied the threshold for pleading a colorable federal defense by pointing to the standard used in *Hagen*: "[A] defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial." *Hagen*, 739 F. Supp. at 783. *Hagen* is distinguishable from this case. In *Hagen*, the defendant was a government contractor, and thus able to plead the government contractor defense. *Id.* D&G does not have that defense available to it.

IV.

Plaintiffs argue that they are entitled to "attorneys' fees, costs, and expenses" under 28 U.S.C. Section 1447(c). (Pls.' Motion at 7.) Under *Martin v. Franklin Capital Corp.*, 546 U.S.

11

132, 140 (2005), "[t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied."  Courts *may* award attorneys' fees, costs, and expenses "where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.  Here, the Court exercises its discretion to deny Plaintiffs' request for attorneys' fees, costs, and expenses.  Remanding the case is a sufficient remedy.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.